# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
## EASTERN DIVISION

| | | |
|---|---|---|
| **DENISE L. JOHNSON,** | ) | |
| | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **Case No. 4:18CV53JCH** |
| | ) | |
| **SPECIAL SCHOOL DISTRICT OF** | ) | |
| **ST. LOUIS COUNTY, et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## MEMORANDUM AND ORDER

Before the Court are the Motions to Dismiss filed by Defendant Special School District of St. Louis County (SSD) and by Defendant Jennings School District (JSD) (jointly, Defendants). (ECF 13; ECF 15). Also before the Court is Plaintiff's Objection to Defendant's Removal of Plaintiff's Case Filed in Missouri State Court (ECF 19) and Amended Objection to Defendant's Removal of Plaintiff's Case Filed in Missouri State Court (ECF 28). The matters are fully briefed and ready for disposition.

## REMOVAL

The SSD removed this matter from the Circuit Court of St. Louis County on January 11, 2018, pursuant to 28 U.S.C. § 1441(a). On February 9, 2018, Plaintiff filed a document titled "Objection to Defendant's Removal of Plaintiff's Case

Filed in Missouri State Court." (ECF 19). Subsequently, Plaintiff filed a document titled "Amended Objection to Defendant's Removal of Plaintiff's Case Filed in Missouri State Court." (ECF 28). In these documents, Plaintiff argues that removal was not proper because the JSD did not properly consent to removal pursuant to 28 U.S.C. § 1446(b)(2)(A) in that it failed to notify the Court, in writing, that it consented to removal.

The Notice of Removal stated that, prior to removal, counsel for the SSD notified counsel for the JSD of the SSD's intention to remove the matter and that the JSD did not object to removal. (ECF 1, ¶ 23; ECF 31.1). Although 28 U.S.C. § 1446(b)(2)(A) does require that all defendants who have been served consent to removal, section 1446(b)(2)(A) does not specify that all defendants notify the court *in writing* of their consent. To the extent that defendants must do so, the JSD filed a Consent to Removal, on April 3, 2018. (ECF 31). As such, the Court finds that the JSD sufficiently consented to removal and that, therefore, removal was proper.[1]

## BACKGROUND

Under the heading "Introduction," Plaintiff's Complaint states, in a single paragraph the following:

> Plaintiff contends that SSD officials discriminated against her by
> refusing to transfer her, [] because of her race (caucasi[a]n) AND her

---

[1] At the time of removal none of the individually named Defendants were served, and, therefore, their consent for removal was not necessary. 28 U.S.C. § 1446(b)(2)(A).

age (over 40) while at the same time transferring others who were younger than her to schools where the level of violence was far less and that the opportunity to flourish as an instructor was much more prevalent. In addition, the SSD did discriminate against her by an unequal and unfair distribution of the workload, not providing appropriate technology to assist the plaintiff in furthering the education of her students, refusing access to printers that actually work, penalizing her for reporting a hot line of abuse by a [JSD] administrator, refusing to provide the basic instructional materials and settings that would be conducive to fostering education. While at the same time providing these requisite items to her African American counter-parts who were younger than her. That the SSD and the [JSD] failed to correct any of the aforementioned after the plaintiff complained to them about discriminatory acts. Further, the plaintiff contends that the Supervisory personnel of the SSD and the JSD retaliated against her for having complained of the discriminatory acts. In addition, the plaintiff contends that the SSD and the JSD retaliated against her for having complained of the discriminatory acts. In addition, the plaintiff contends that the SSD and JSD supervisors did retaliate against her for having reported the wrong doings of some of the aforementioned supervisors. The retaliation consisted of, but was not limited to[:] creating a hostile work environment, causing her to suffer major depression, failed to provide reasonable accommodations, punished her for using medical leave to obtain treatment for medical issues and her rights under the Equal Employment Opportunity Act to obtain legal representation to combat the retaliation by work induced maladies, poor work evaluations and threats of discharge. In addition, the acts of the supervisory personnel sought to inflict emotional distress upon the plaintiff. That not only did supervisors create the hate filled work environment but the higher up supervisors condoned their discriminatory and retaliatory acts making them culpable in the distress of the plaintiff. That the defendants were guilty of despicable acts designed to discriminate in an egregious "Willful and Wanton" manner that they should be appropriately punished by allowing "Punitive Damages" against the defendants.

(ECF 4, ¶ 1).

As relevant, Plaintiff alleges, under the heading "Parties," that: she is a

Caucasian female who was at least forty years of age and a career speech and language pathologist; at all times relevant, "including [the] present day she has been employed with SSD as a Speech and Language pathologist"; that she is "a mandated reporter under both State and Federal law regarding physical, emotional, and sexual abuse of the minor children under her care"; and that the SSD and the JSD are municipal governmental agencies. (ECF 4, ¶¶ 5-8).

In numbered paragraphs under the heading "Statement of Facts," Plaintiff alleges that: at all times relevant, she worked at the University City Belmar Harvard Elementary School in the University City School District and the Northview Elementary School in the JSD; "at all times relevant [she] was working within the [SSD] wherein they oversee the operations and activities of the individual instructors on a concurrent basis"; Plaintiff's "first level supervisor for the SSD" at the time of the "discrimination" and "retaliation" was "DeAndria Player (female African American)"; Plaintiff's first level supervisors at the SSD at the time of Plaintiff's "Whis[t]leblower reporting" were "DeAndria Player and Constance Johnson"; Plaintiff's "third level supervisor for the SSD at the time of the 'discrimination' [and retaliation] was Don Bohannon"; "DeAndria Player was a protégé of Gina Hastey"; "[w]hen DeAndria Player became [Plaintiff's] supervisor she continued the discriminatory acts as promised by Gina Hastey"; Gina Hastey "engaged in age and racial discrimination from 2010 to present day when she

4

placed unfair and unrelenting expectations on [Plaintiff]"; Hastey and her agents retaliated "by refusing to transfer [Plaintiff] out of [the JSD] while granting transfers to others of younger years"; Hastey "retaliate[d] by assessing unfair and unjust Personal Improvement Plan (PIP), unfair and unjust evaluation"; when DeAndria Player, who is an African American female, became Plaintiff's supervisor, she "continued the discriminatory acts as promised by [] Hastey"; in March 2015, DeAndria Player placed Plaintiff on a second PIP and was, among other things, rude, and told Plaintiff to "go teach somewhere closer to her home"; subsequently, Player retaliated by "having [] SSD send [] [P]laintiff a '30 day letter' threatening termination"; Player fabricated "a story about [] [P]laintiff not inviting a parent to a scheduled Individualized Education Plan (IEP)"; Player retaliated against Plaintiff because Plaintiff filed complaints against her with [the] Union and Human Resources director Don Bohannon; Player retaliated against Plaintiff by "reprimanding [her] for not signing in and out for attendance purposes," although "the black teachers did not have to sign in and out"; and, in May 2015, Plaintiff reported an alleged violation of the "Missouri Department of Elementary and Secondary Education rules and regulations regarding IEP meetings" to "Don Bohannon along with all other retaliatory actions on the part of DeAndria Player and other District and building personnel." (ECF 4, ¶¶ 11-36).

Further, under the heading "Statement of Facts," Plaintiff alleges that: in

August 2015, Plaintiff filed a "Hot Line report" against her building principal, Dr. Hicks Prophet, regarding "a very challenged IEP student"; during the meeting regarding the Hot Line report, Assistant Principal Dr. Gyton, stated that "'we don't need a circus around here with spectators,' as if [] [P]laintiff was part of a 'Circus with spectators'"; after this meeting, "Constance Johnson[2] called DeAndria Player and DeAndria [told] Ms. Johnson to tell [] [P]laintiff to go home"; Plaintiff called her Union representative to report what happened; after the August 2015 meeting, the retaliation against Plaintiff "really started" and Constance Johnson "started constantly giving memos as to things [Plaintiff] was not supposedly doing correctly"; Dr. Hicks Prophet, then "began giving [Plaintiff] dirty glaring looks" and began to "ostracize" her; then Player and Jody Haye, a supervisor in the Special Non-Public Access Program (SNAP), retaliated by removing Plaintiff from participating in SNAP, which had an effect on Plaintiff's "annual income and her lifetime monthly retirement amount"; Player and "others" constantly harassed Plaintiff, by among other things, preventing her from attending workshops, unequally distributing the workload, and doing "anything that might place [] [P]laintiff into a position of violating school or district policy"; in January 2016, Player came to Plaintiff, "challenge[d] [her] obligation to do SNAP after school even though" it had been approved and threatened Plaintiff "with the past,"

---

[2] The case caption identifies Constance Johnson as "Area Coordinator, previous."

including Plaintiff's having previously received a "30 Day Letter"; when Player came to Plaintiff in January 2016, she told Plaintiff that she was "back as her supervisor" and that Plaintiff would "no longer be doing SNAP"; "[l]ater, Jody Haye, Gina Hastey's friend contact[ed] [Plaintiff] and want[ed] [her] to leave her present assignment and go" to a different school district "but later withd[rew] the offer due to []Andria Player's interference and refusal to allow [] [P]laintiff to take part in SNAP"; on August 28, 2017, Holly Kloppenburg, who was then the SNAP supervisor, told Plaintiff that she had a conversation with Jody Haye who said that Plaintiff "was to never work SNAP per [] Player's directive"; Player declined a position at Hazelwood High School where she would be working with older much more aggressive students; Player requested that Plaintiff take the Hazelwood High School position; Plaintiff feared that, upon requesting that Plaintiff take the transfer to Hazelwood, she was being "set up for failure because she had never worked with high school students"; after Plaintiff declined to take the Hazelwood position, Player told Plaintiff that if she did not take the position, Player "better never hear [Plaintiff] complain about anything to SSD or Jennings ever again"; Plaintiff "was fearful of more retaliation and finally gave in and took the transfer"; and Plaintiff's supervisors engaged in age and racial discrimination against her "either by direct involvement or by being complacent and doing nothing to prevent the discriminatory acts regarding both age and race, and whistleblowing." (ECF 4,

¶¶ 38-46).

Plaintiff's Complaint titles Counts I through X as follows: Racial
Discrimination in violation of the Missouri Human Rights Act (MHRA), Mo. Rev.
Stat. § 213, and Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et
seq.* (Count I); Age Discrimination in violation of the MHRA and the Age
Discrimination in Employment Act (ADEA), 29 U.S.C. § 621 (Count II); Reprisal
for Engaging in Protected Activities, in violation of the MHRA (Count III);
"Reprisal for Engaging in 'Whistleblower' Protected Activity" in violation of the
Americans with Disabilities Act (ADA), 42 U.S.C. § 12203(a), Title VII, the
Education Amendments of 1972, (Title IX), 20 U.S.C. § 1681, *et seq.*, the Family
and Medical Leave Act (FMLA), 29 U.S.C. § 2614, and the Rehabilitation Act, 29
U.S.C. § 794 (Count IV); Violation of the Rehabilitation Act, 29 U.S.C. § 710, *et
seq.* (Count V); "Hostile and Abusive Work Environment" (Count VI); Intentional
Infliction of Emotional Distress (IIED) (Count VII); Negligent Infliction of
Emotional Distress (NIED) (Count VIII); "Tortious Interference with a Business
Expectancy" (Count IX); and "Willful and Wanton" (Count X). (ECF 4).

In her Responses to the Motions to Dismiss, Plaintiff introduces and
references facts which are not alleged in the Complaint. (ECF 26 & 27). She has
not submitted a sworn affidavit to support any of the additional facts to which she
refers in her Responses and has not sought leave to file an amended complaint. In

her Responses, Plaintiff also references exhibits she submitted in support of her Motion for an Extension of Time to Obtain an Attorney. (ECF 24.1-24.51). In the interest of justice, the Court will consider these exhibits, to the extent they are relevant to the Motions to Dismiss.

The exhibits which Plaintiff submitted in support of her Motion for Extension of Time to Obtain an Attorney reflect, among other things, that: Plaintiff suffered injuries in a motor vehicle collision on September 18, 2017 (ECF 24.3); on October 14, 2017, a doctor noted that Plaintiff had a normal physical exam, a normal neurological exam, including a normal memory, and a normal psychiatric exam, including normal orientation, mood, affect, insight, and judgment (ECF 24.28); Plaintiff requested FMLA leave from the SSD due to fatigue with chronic headaches and neck and back pain and stated that her condition started on September 18, 2017, and that she would need to have her work schedule reduced two to three hours (ECF 24.15-24.17); on November 20, 2017, Plaintiff presented for the purpose of having her FMLA "papers extended," and stated that she had physical problems which were "keeping her from getting her paper work at work completed by the deadlines so she want[ed] a duty modification so she [could] have extensions" (ECF 24.27); on November 30, 2017, Plaintiff's request for FMLA leave was approved by the SSD and, pursuant to this approval, Plaintiff could take "Intermittent Leave" (ECF 24.19-24.20); on

November 30 and December 19 and 28, 2017, January 30, 2018, February 14, 2018, and March 1, 2018, Plaintiff presented for counseling (ECF 24.32-24.37); on January 11, 2018, Plaintiff signed a form acknowledging that she was being placed on "paid administrative leave" and would not have "SSD technology access" and she would not be "conducting any SSD business" (ECF 24.46-24.47); on January 20, 2018, Plaintiff had an MRI of the cervical spine (ECF 40); on January 11, 2018, Plaintiff signed a notice of a due process meeting, acknowledging that "all SSD Technology access [would] be removed and that [she] [would] not be conducting any SSD business or attending any SSD or Partner District Trainings" (ECF 24.47); a February 1, 2018 form reflects that Plaintiff was requesting an accommodation and that she had headaches and chronic neck pain with fatigue (ECF 24.21-24.22); a February 5, 2018 letter from the SSD to Plaintiff acknowledged receiving a "Medical Inquiry Form," from Plaintiff's physician requesting "work accommodations of 'Extension on progress reporting and Medicaid billing on correct student records or data on a daily basis,'" and stated that the SSD needed a "medical diagnosis" and information regarding the "frequency and duration of time required for the [requested] extension" (ECF 24.42); the February 5, 2018 letter also stated that after receiving the requested information from Plaintiff's physician, the SSD would contact Plaintiff to discuss whether she qualified for a reasonable job accommodation and whether reasonable

job accommodations existed (ECF 24.42); on February 9, 2018, it was reported that Plaintiff was in an automobile accident in September 2017 and was diagnosed with a concussion and spinal stenosis, that she still had pain, that she had a past history of depression, that a neurological exam was normal which exam included a finding that her memory was normal, and that her psychiatric examination was normal in that Plaintiff was oriented and had appropriate mood, affect, and judgment (ECF 24.24 and 24.26); on February 21, 2018, Plaintiff sent an e-mail regarding her request for "Administrative Leave/FMLA," which stated that the SSD already had the information it requested and that she would be returning to school on February 26, 2018 (ECF 24.48-24.49); and, on February 23, 2018, the SSD sent Plaintiff notification, in regard to an investigation for allegations of violating Board policies, that she should return to work on February 26, 2018, and that she would receive a PIP (ECF 24.50).

## LEGAL STANDARD FOR A MOTION TO DISMISS

Federal Rule of Civil Procedure 8(a)(2) requires "a short and plain statement of the claim showing that the pleader is entitled to relief." Allegations are to be "simple, concise, and direct." Fed. R. Civ. P. 8(d)(1). Federal Rule of Civil Procedure 10(b) provides that in his or her complaint:

> A party must state its claims or defenses in numbered paragraphs, each limited as far as practicable to a single set of circumstances. . . . If doing so would promote clarity, each claim founded on a separate transaction or occurrence--and each defense other than a denial--must

be stated in a separate count or defense.

Fed. R. Civ. P. 12(b)(6) provides for a motion to dismiss based on the "failure to state a claim upon which relief can be granted." To survive a motion to dismiss a complaint must show that "'the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555 (2007) (*quoting Conley v. Gibson*, 355 U.S. 41, 47 (1957)). *See also Erickson v. Pardus,* 551 U.S. 89, 93 (2007).

"Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to defeat a motion to dismiss. *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (*citing Twombly,* 550 U.S. at 555). "[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss." *Id.* at 679 (*citing Twombly,* 550 U.S. at 556). The pleading standard of Rule 8 "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft,* 556 U.S. at 678 (*quoting Twombly,* 550 U.S. at 555).

Further, in regard to a Rule 12(b)(6) Motion, the Supreme Court holds:

While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, [citations omitted] a plaintiff's obligation to provide the "grounds" of his "entitle[ment] to relief" requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do, *see Papasan v. Allain,* 478 U.S. 265, 286, 106 S. Ct. 2932, 92 L. Ed.2d 209 (1986) (on a

motion to dismiss, courts "are not bound to accept as true a legal conclusion couched as a factual allegation"). Factual allegations must be enough to raise a right to relief above the speculative level, *see* 5 C. Wright & A. Miller, Federal Practice and Procedure ' 1216, pp. 235-236 (3d ed. 2004).

*Twombly,* 550 U.S. at 555. *See also Gregory v. Dillard=s, Inc.*, 565 F.3d 464, 473 (8th Cir. 2009) (en banc) ("[A] plaintiff 'must assert facts that affirmatively and plausibly suggest that the pleader has the right he claims . . . , rather than facts that are merely consistent with such a right.'") (*quoting Stalley v. Catholic Health Initiative,* 509 F.3d 517, 521 (8th Cir. 2007)).

Additionally, "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable." *Twombly,* 550 U.S. at 556 (citation omitted). "The issue is not whether plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support [his or her] claims." *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974) (*abrogated on other grounds, Horlow v. Fitzgerald,* 457 U.S. 800 (1982)).

A pro se complaint should be liberally construed. *Stone v. Harry*, 364 F.3d 912, 914 (8th Cir. 2014) (citing *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). *See also Frey v. City of Herculaneum,* 44 F.3d 667, 671 (8th Cir. 1995) (holding that in civil rights actions a complaint should be liberally construed when determining whether it has stated a cause of action sufficient to survive a motion to dismiss). The complaint must, however, "still allege sufficient facts to support the claims

advanced." *Stone,* 364 F.3d at 914 (*citing Dunn v. White,* 880 F.2d 1188, 1197 (10th Cir. 1989) (regarding a pro se plaintiff, "we will not supply additional facts, nor will we construct a legal theory for plaintiff that assumes facts that have not been pleaded."); *Cunningham v. Ray,* 648 F.2d 1185, 1186 (8th Cir. 1981) ("[P]ro se litigants must set forth [a claim] in a manner which, taking the pleaded facts as true, states a claim as a matter of law.").

The Court will apply the above stated principles to the pending Motions to Dismiss.

## DISCUSSION

### Count I: Racial Discrimination in Violation of the MHRA and Title VII:

In addition to the allegations set forth above, which Plaintiff incorporates in all Counts, Plaintiff alleges, in Count I, that "Defendant's conduct . . . constitutes discrimination based on race in violation of Title VII," and that "[t]he stated reasons for the Defendant's conduct were not the true reasons, but instead were the pretext to hide the Defendant's discriminatory animus." (ECF 4, ¶ 48).

The SSD and the JSD each contend that Count I of Plaintiff's Complaint, alleging racial discrimination in violation of Title VII and the MHRA, should be dismissed as untimely. (ECF 14 at 5-6; ECF 16 at 3).

Prior to filing suit pursuant to Title VII, a plaintiff must file a discrimination charge with the Equal Employment Opportunity Commission (EEOC) or the

Missouri Commission on Human Rights (MCHR) and obtain a right-to-sue letter. Litigation must be instituted within the ninety-day period specified in the right-to sue letter. *Winbush v. State of Iowa, By Glenwood State Hosp.,* 66 F.3d 1471, 1477 (8th Cir. 1995). *See also Nat'l R.R. Passenger Corp. v. Morgan,* 536 U.S. 101, 109 (2002) (the "charge filing provision [of Title VII] [] 'specifies with precision' the prerequisites that a plaintiff must satisfy before filing suit," including that "[a]n individual must file a charge within the statutory time period and serve notice upon the person against whom the charge is made") (quoting *Alexander v. Gardner–Denver Co.,* 415 U.S. 36, 47 (1974)). Failure to file suit within ninety days *after receipt of a notice from the EEOC* renders a plaintiff's action untimely. *See Brooks v. Ferguson-Florissant Sch. Dist.,* 113 F.3d 903, 905 (8th Cir. 1997) (noting that the EEOC letter "plainly" said the plaintiff would lose his right to a cause of action if one was not filed within 90 days). *See also Littell v. Aid Ass'n for Lutherans,* 62 F.3d 257, 259 (8th Cir. 1995) (considering a suit pursuant to the ADEA and holding that "the plain meaning of the statute now provides that failure to file suit within ninety days after the receipt of a notice from the EEOC renders a plaintiff's action untimely").

The MHRA, § 213.111.1 provides that any action brought pursuant to the MHRA must be filed within ninety days *from the date of the MCHR notification letter*. Thus, under the MHRA, the statute of limitations for filing suit begins to

run when the right-to-sue letter *is issued*, rather than the date the letter is received. *Hammond v. Mun. Correction Inst.,* 117 S.W.3d 130, 133 (Mo. App. 2003).

Plaintiff filed a dual charge of discrimination against the SSD and the JSD with the MCHR and the EEOC on December 29, 2015. (ECF 14.1). On March 21, 2017, the MCHR issued a right-to-sue letter, stating Plaintiff had ninety days from the date of the letter to file suit (ECF 14.3), and, on June 7, 2017, the EEOC, through the United States Department of Justice (DOJ), issued a right-to-sue letter, stating that Plaintiff had ninety days from the date she received the letter to file suit (ECF 14.2). Plaintiff, however, did not file this action in State court until December 1, 2017, well past the ninety-day period provided by Title VII and the MHRA, and as specified in the letters from the MCHR and the EEOC.

Plaintiff argues that the investigative file does not reflect when she received the MCHR's right-to-sue letter, and she states that she cannot establish when she received this letter and that she never received this letter. (ECF 26, ¶ 6; ECF 27, ¶¶ 20, 18). Plaintiff also argues that she did not receive a right-to-sue letter from the EEOC until September 2, 2017. (ECF 26, ¶ 7; ECF 27, ¶ 21).

First, in regard to the MCHR's March 21, 2017 right-to-sue letter, and the EEOC's June 7, 2017 right-to-sue letter, there is a presumption that Plaintiff received these letters within three days of the date they were mailed. *See Rich v. Bob Downes Chrysler Plymouth, Inc.,* 831 F. Supp. 733, 735 (E.D. Mo. 1993) ("A

presumption exists that the notice was received three days after its mailing.")
(citations omitted).

In support of her contention that she did not receive a right-to-sue letter from
the EEOC until September 2, 2017, Plaintiff has submitted a right-to-sue letter
from the EEOC through the DOJ, dated August 24, 2017, which letter states that
Plaintiff had 90 days from her receipt of the letter to file suit.[3]  (ECF 24.2).  As
stated above, Plaintiff argues that she did not receive the EEOC's August 24, 2017
letter until September 2, 2017.  (ECF 26, ¶ 7; ECF 27, ¶¶ 21-22).  The tracking
history of this letter reflects, however, that delivery was attempted on September 1,
2017.[4]  (ECF 32.1)  September 1, 2017, is, therefore, considered the triggering
point for ninety-day period.  *See Nelmida v. Shelly Eurocars, Inc.,* 112 F.3d 380,
384 (9th Cir. 1997) ("We hold that the ninety-day period within which to file suit
began running when delivery of the right-to-sue notice was attempted at the
address of record with the EEOC and that Nelmida's Title VII action is therefore
time-barred."); *Watts-Means v. Prince George's Family Crisis Center,* 7 F.3d 40,

_____

[3]  The Record does not reflect why the August 24, 2017 letter was sent to Plaintiff.

[4]  Courts may take judicial notice of United States Postal Service tracking
information. *See e.g., Whiting v. United States,* 2016 WL 3946920, at *2-3 (C.D.
Cal. June 21, 2016)) ("The Court generally cannot consider materials other than
the complaint when ruling on a motion to dismiss under Rule 12(b)(6), but a court
may take judicial notice of facts that are '(1) generally known within the territorial
jurisdiction of the court; or (2) capable of accurate and ready determination by
resort to sources whose accuracy cannot reasonably be questioned.'") (quoting
Fed. R. Evid. 201(b)).

42 (4th Cir. 1993) ("Because we find that the limitations period in this case was triggered on March 21, 1988, when Watts–Means received her notice that she could pick up a letter at the post office, we hold that her filing of her Title VII claims on June 24, 1988, was not within the limitations period.") Because the ninety-day period commenced running September 1, 2017, Plaintiff filed her Complaint on the ninety-first day, and her Complaint was, therefore, untimely. *See e.g., Christian v. Central Record Servs., Inc.,* 2007 WL 703929, at *2 (W.D. Ark. March 5, 2007) (where complaint was filed on ninety-first day after receipt of the EEOC's right-to-sue letter, complaint was untimely, unless "any time was effectively tolled").

To the extent Plaintiff argues that equitable tolling should apply to the ninety-day period she had to file suit because she was "under a medical disability" (ECF 26, ¶ 9; ECF 27, ¶ 23; ECF 36, ¶ 4), in a Title VII case, equitable tolling is "appropriate only where (1) the plaintiff pursued her claims diligently but (2) some extraordinary circumstance 'stood in [her] way.'" *Brinkman v. Nasseff Mech. Contractors Inc.,* 251 F. Supp. 3d 1266, 1274 (D. Minn. 2017) (*quoting Smithrud v. City of St. Paul,* 746 F.3d 391, 396 (8th Cir. 2014)). Equitable tolling, moreover, is applied "sparingly" by federal courts. *Brinkman,* 251 F. Supp. 3d at 1274 (citation omitted). Documents submitted by Plaintiff show that, during the period from September 1 to December 1, 2017, she had normal physical,

neurological, and psychiatric examinations. As such, the Court finds that Plaintiff's unsupported allegation that a medical disability prevented her from timely filing suit is insufficient to toll the ninety-day period she had to file suit.

Plaintiff argues that, pursuant to Mo. Rev. Stat. § 213.111.1, she had two years to file a lawsuit. (ECF 36, ¶ 6). Indeed, Mo. Rev. Stat. § 213.111.1 does provide that "[a]ny action brought in court under [the MHRA] shall be filed within ninety days from the date of the commission's notification letter to the individual but no later than two years after the alleged cause occurred or its reasonable discovery by the alleged injured party." The plain meaning of Mo. Rev. Stat. § 213.111.1 establishes, however, that its two-year provision is an exception which applies when a cause of action is not readily discoverable. Because Plaintiff was aware of the facts giving rise to her cause of action no later than September 2, 2017, the Court finds that the two-year exception is not applicable to Plaintiff's case.

The Court finds, therefore, that Count I of Plaintiff's Complaint, alleging that the SSD and the JSD engaged in racial discrimination in violation of Title VII and the MHRA, should be dismissed as untimely in regard to the SSD and the JSD.

**Count II – Age Discrimination in Violation of the MHRA and the ADEA:**

In addition to the allegations which Plaintiff incorporates in all Counts, Plaintiff alleges, in Count II, titled "Age Discrimination" in violation of the

MHRA and the ADEA, that "Defendant's conduct . . . constitutes discrimination based on Age in violation of ADEA," and that "[t]he stated reasons for the Defendant's conduct were not the true reasons, but instead were the pretext to hide the Defendant's discriminatory animus." (ECF 4, ¶ 50).

The SDS and the JSD contend that Count II should be dismissed based on Plaintiff's failure to exhaust administrative remedies. (ECF 14 at 6-7; ECF 16 at 3).

Both the MHRA and the ADEA require that an administrative claim be filed before suit can be filed. MHRA, Mo. Rev. Stat § 213.075(1); ADEA, 29 U.S.C. § 626(d). "Exhaustion of administrative remedies entitling a claimant to bring a cause of action, under both statutes, requires a claimant to give notice of all claims of discrimination in the administrative complaint." *Stuart v. Gen. Motors Corp.,* 217 F.3d 621, 630 (8th Cir. 2000) (internal quotation marks and citation omitted). Thus, if a plaintiff fails to exhaust her administrative remedies prior to filing suit, her suit is barred based on her failure to do so. Administrative remedies are exhausted where a plaintiff's claim of discrimination "grows out of or is like or reasonably related to the substance of the allegations in the administrative charge." *See Taylor v. Wright,* 2005 WL 2033422, at *3 (E.D. Mo. Aug. 23, 2005) (*citing Kells v. Sinclair Buick-GMC Truck, Inc.,* 210 F.3d 827, 836 (8th Cir. 2000); *also citing Duncan v. Delta Consol. Indus., Inc.,* 371 F.3d 1020, 1025 (8th Cir. 2004)

("[T]he sweep of any subsequent judicial complaint may be [only] as broad as the scope of the EEOC investigation which could reasonably be expected to grow out of the charge of discrimination.") (other citations omitted). *See also Gates v. City of Lebanon,* 585 F. Supp. 2d 1096, 1100 (W.D. Mo. 2008) ("Exhaustion of administrative remedies entitling a claimant to bring a cause of action, under both [the ADEA and the MHRA], requires a claimant to give notice of all claims of discrimination in the administrative complaint.") (citation omitted).

Plaintiff, in the matter under consideration, did not allege age discrimination on the joint EEOC-MCHR complaint form; she did not check the box indicating discrimination based on "Age"; she checked only boxes indicating discrimination based on "Race" and "Retaliation"; in the space provided for a statement of "Particulars," Plaintiff stated that she had been discriminated against based on her race and "retaliated against for advocating for students with disabilities and reporting violations under the IDEA."

Plaintiff argues that, pursuant to a "Continuing Violation Theory," she should be allowed to include "Age Discrimination" as a "retaliatory act." (ECF 26, ¶ 36). Notably, as stated above, Plaintiff did not mention age in the joint charge. *See Gates,* 585 F. Supp. 2d at 1100 (dismissing a plaintiff's claim for age discrimination under the ADEA and MHRA because "[n]othing suggests the investigation should have extended into the possibility that the plaintiff's age was

also a factor in the decision to terminate his employment"). She could have easily checked the box indicating her claim was based on age. Further, upon consideration of the facts alleged in the Complaint, the Court finds that Plaintiff's claim of age discrimination in Count II is in no way like or reasonably related to the race discrimination and retaliation allegations contained in her administrative charge. *See Duncan,* 371 F.3d at 1025. The Court finds, therefore, that Plaintiff's joint EEOC-MCHR charge did not allege age discrimination (ECF 14.1); that the right-to-sue letters Plaintiff received from the EEOC and the MCHR relate only to Plaintiff's administrative charge of race discrimination and retaliation (ECF 14.2; ECF 14.3); that Plaintiff did not administratively exhaust her ADEA and MHRA age discrimination claim; and that, therefore, the SDS's and the JSD's Motions to Dismiss should be granted in regard to Count II.

Even if the Court were to assume that Plaintiff's claim of age discrimination in Count II is reasonably related to Plaintiff's joint EEOC-MCHR charge, as discussed above in regard to Count I, Plaintiff's Complaint is untimely. *See Nelmida,* 112 F.3d at 384; *Winbush,* 66 F.3d at 1477; *Littell,* 62 F.3d at 259; *Hammond,* 117 S.W.3d at 133. As such, the Court finds, alternatively, that Plaintiff's claims of age discrimination under the MHRA and the ADEA should be dismissed as untimely.

Finally, Plaintiff's Complaint makes only legal conclusions to support her

claim of age discrimination, *see Ashcroft,* 556 U.S. at 678, and Plaintiff fails to allege facts sufficient to support a claim that the SDS or the JSD took adverse employment action against her based on her age, *see Twombly,* 550 U.S. at 555; *Kehoe v. Anheuser-Busch, Inc.,* 96 F.3d 1095, 1104 n.11 (8th Cir. 1996) (to establish a prima facie case of age discrimination of failure to transfer a plaintiff must show "(1) he is a member of a protected class; (2) he applied for and was denied a position for which he was qualified; and (3) the position was given to a significantly younger person"); *Clark v. Matthews Int'l Corp.,* 639 F.3d 391, 398 (8th Cir. 2011) ("[T]he ordinary meaning of the ADEA's requirement that an employer took adverse action 'because of' age is that age was the 'reason' that the employer decided to act."; the difference between the ADEA and the MHRA is that under the MHRA a plaintiff is not required to prove that age was the "but for" cause for an adverse employment action) (internal citation omitted); *Riley v. Lance, Inc.,* 518 F.3d 996, 1000-1001 (8th Cir. 2008) (elements of a prima facie case of age discrimination under the ADEA and MHRA include that plaintiff was a member of a protected class; that plaintiff was replaced with a substantially younger person; that plaintiff was qualified for the job at issue; and that plaintiff's termination occurred in circumstances giving rise to an inference of unlawful discrimination). The Court finds, therefore, in the alternative, that Count II of Plaintiff's Complaint fails to state a cause of action pursuant to the ADEA or the

MHRA for age discrimination and that Count II against the SSD and the JSD should be dismissed.

**Count III – Reprisal for Engaging in Protected Activities in Violation of the MHRA:**

In addition to the facts which Plaintiff alleges in regard to all Counts, in support of Count III she alleges that the conduct described in the Complaint "constitutes retaliation against [] [P]laintiff because she engaged in activities protected by Title VII and the ADEA," and that "[t]he stated reasons for [] Defendant's conduct were not the true reasons, but instead were the pretext to hide [their] discriminatory animus."  (ECF 4 at ¶ 52).

Plaintiff argues that the SSD and the JSD retaliated against her based on her "mandate[ed] reporting," and states that she engaged in protected activity by reporting a principal, Dr. Hicks-Prophet, for abusing a special needs child.  (ECF 26, ¶ 41).  Plaintiff did allege, in her Complaint, that she filed a "Hot Line report" against Dr. Hicks-Prophet; that Constance Johnson was "irritated that the call was made"; that she was told to go home after an August 2015 meeting regarding the Hot Line report; that "the retaliation against [her] really started" after the August 2015 meeting; and that the retaliation took the form of giving Plaintiff "memos [regarding] things [she] was not supposedly doing correctly."  (ECF 4, ¶ 38).  As a preliminary matter, Plaintiff's arguing that Defendants retaliated against her based on her engaging in mandated reporting is not relevant to her claim of retaliation

based on Title VII or the ADEA, and Plaintiff's Complaint does not allege a private cause of action based on retaliation for engaging in mandated reporting.

As argued by Defendants, to the extent Plaintiff alleges retaliation based on her engaging in activities protected under Title VII and the MHRA, as discussed above in regard to Counts I, the Court finds that Count III is untimely. *See Nelmida,* 112 F.3d at 384; *Winbush,* 66 F.3d at 1477; *Littell,* 62 F.3d at 259; *Hammond,* 117 S.W.3d at 133. To the extent Plaintiff alleges retaliation based on age discrimination under the MHRA and the ADEA, as discussed above in regard to Count II, not only did Plaintiff fail to exhaust her administrative remedies, *see Duncan,* 371 F.3d at 1025; at 259; *Hammond,* 117 S.W.3d at 133; *Taylor,* 2005 WL 2033422, at *3, but, even if Plaintiff's allegation of retaliation based on age discrimination is reasonably related to the claims she made in her joint EEOC-MCHR charge, her claims of retaliation are time barred, *see Nelmida,* 112 F.3d at 384; *Watts-Means,* 7 F.3d at 42; *Bob Downes,* 831 F. Supp. at 735. The Court finds, therefore, that Count III of Plaintiff's Complaint should be dismissed as to the SSD and the JSD.

**Count IV – Reprisal for Engaging in "Whistleblower" Protected Activity in Violation of the ADA, Title VII, Title IX, the FMLA, and the Rehabilitation Act:**

In addition to the facts which Plaintiff generally alleges in regard to all Counts, Plaintiff alleges, in support of Count IV, that the SSD's and the JSD's

conduct constitutes retaliation in violation of the ADA, Title VII, Title IX, the FMLA, and the Rehabilitation Act, and that "the stated reasons for Defendant's conduct were not the true reasons, but instead were the pretext to hide [] Defendant's discriminatory animus." (ECF 4, ¶¶ 54-55).

In her Response to the Motions to Dismiss, Plaintiff argues, in support of Count IV, that, in May or June 2014, she reported DeAndria Player to the SSD's human resource office "for violating the Individuals with Disabilities Act" (IDEA), and that "[t]his behavior qualifies under the 'Charge of Discrimination' and the 'Continuing Violation Theory.'" (ECF 26, ¶ 45).

The SSD and the JSD argue that Plaintiff's Title VII claim, in Count IV, should be dismissed as untimely. (ECF 14 at 8-9; ECF 16 at 3-4). For the reasons set forth above in regard to Count I, the Court agrees and finds that Plaintiff's Title VII claim, in Count IV, should be dismissed as untimely. *See Nelmida,* 112 F.3d at 384; *Winbush,* 66 F.3d at 1477; *Littell,* 62 F.3d at 259.

The SSD argues, in regard to Plaintiff's allegation of a violation of Title IX in Count IV, that Count IV should be dismissed because Plaintiff fails to allege discrimination on the basis of sex. (ECF 14 at 9). The JSD argues that Plaintiff's Title IX claim should be dismissed because Title IX applies only to retaliation against those who complain about sex discrimination under Title IX, and because Plaintiff fails to allege any facts to support such a claim. (ECF 16 at 4).

Plaintiff argues, in response, that Title IX "has many tentacles which affect Women in Education employment" and that "there was Affirmative Action for Women in all areas of education, including employment." (ECF 26, ¶ 46; ECF 27, ¶ 38). The Court fails to see how this argument is relevant to Plaintiff's claim, in Count IV, of "Reprisal for Engaging in 'Whistleblower' Protected Activity," in violation of Title IX.

Further, Title IX applies only where someone was "excluded from participation in, [] denied the benefits of, or [] subjected to discrimination under any education program or activity receiving Federal financial assistance," with certain exceptions, 20 U.S.C. § 1681(a), and prohibits retaliation only for those who complain about sex discrimination under Title IX, *see Jackson v. Birmingham Bd. of Educ.,* 544 U.S. 167, 174-76 (2005) (Title IX prohibits retaliation for speaking out against sex discrimination prohibited by Title IX and prohibits discrimination only for those to complain about sex discrimination under Title IX). Because Plaintiff makes only conclusory legal statements that the SSD and the JSD violated Title IX by retaliating against her because she was a Whistleblower under Title IX, and because Plaintiff fails to allege any facts to support such a claim, including that Defendants engaged in sex-based discrimination, the Court finds that Plaintiff's Title IX retaliation claim, in Count IV, should be dismissed. *See Ashcroft,* 556 U.S. at 678; *Twombly,* 550 U.S. at 555.

In regard to Plaintiff's FMLA claim in Count IV, as argued by Defendants, the FMLA only gives rise to a claim for retaliation when an employer allegedly "interferes with" or "retaliates against" a plaintiff for reasons related to protections granted under the FMLA. *See* 29 U.S.C. § 2612(a)(1)(A)-(E) (eligible employees are entitled to take a total of 12 workweeks of leave during any 12-month period for various health reasons); 29 U.S.C. § 2615(a)(1) ("It shall be unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under this subchapter."); 29 U.S.C. § 2615(a)(2) ("It shall be unlawful for any employer to discharge or in any other manner discriminate against any individual for opposing any practice made unlawful by this subchapter."); *Stallings v. Hussmann Corp.,* 447 F.3d 1041, 1050-51 (8th Cir. 2006) ("The FMLA provides job security to employees who must miss work because of their own illnesses, to care for family members, or to care for new babies."; "An employer is prohibited from interfering with, restraining, or denying an employee's exercise of or attempted exercise of any right contained in the FMLA. Interference includes not only refusing to authorize FMLA leave, but discouraging an employee from using such leave. It would also include manipulation by a covered employer to avoid responsibilities under FMLA.") (internal quotation marks and citations omitted). A complaint alleging retaliation based on the FMLA should, therefore, be dismissed when it does not allege that an

employer retaliated against the plaintiff for her taking FMLA leave or otherwise invoking the FMLA. *See id.*

Plaintiff does not allege facts in her Complaint suggesting she ever engaged in whistleblowing activity related to the FMLA. Further, the record reflects that the SSD approved Plaintiff's application for FMLA leave on November 30, 2017. (ECF 14.19-24.20). Because Plaintiff's Complaint makes only conclusory legal statements to support her claim of retaliation based on her being a Whistleblower under the FMLA and because her Complaint fails to allege facts supporting such a claim, the Court finds that Plaintiff's FMLA claim, in Count IV should be dismissed. *See Ashcroft,* 556 U.S. at 678; *Twombly,* 550 U.S. at 555.

As for Plaintiff's allegation that the SSD and the JSD retaliated against her for being a "Whistleblower" in violation of the Rehabilitation Act, Defendants argue that Plaintiff fails to allege that she has a disability or that she suffered an adverse employment action because she has a disability. (ECF 14 at 9; ECF 16 at 4).

The Rehabilitation Act, 29 U.S.C. § 701 *et seq.*, provides "the same rights, procedure and remedies" as the ADA, the only difference being that the Rehabilitation Act "applies to entities that receive federal financial assistance." *Bechtel v. State Dept. of Soc. Servs.,* 274 S.W.3d 464, 467 n.3 (Mo. 2009) (en banc). Specifically, the Rehabilitation Act, 29 U.S.C. § 794(a), provides that "[n]o

otherwise qualified individual *with a disability*" shall "be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." (emphasis added). The elements of a prima facie case under the Rehabilitation Act are that "(1) [the [plaintiff] is disabled within the meaning of the statute; (2) she is able to perform the essential functions of the job with or without reasonable accommodation; and (3) she has suffered an adverse employment action as a result of the disability." *Joelson v. Dep't of Veterans Affairs,* 177 F. Supp. 2d 967, 970 (S.E.N.D. 2001). A prima facie case for retaliation under the Rehabilitation Act includes "(i) protected activity, (ii) adverse action taken by the employer against the employee, and (iii) a causal link between the two." *Id.* at 972. Proof of an adverse employment action requires a "tangible change in duties or working conditions that constitute [] a material employment disadvantage." *Id*.

The term "individual with a disability," under the Rehabilitation Act, refers to an individual who "has a physical or mental impairment which [] constitutes or results in a substantial impediment to employment" and who "can benefit in terms of employment outcome from vocational rehabilitation services." 29 USC § 705(20). "To prevail on a claim under [the Rehabilitation Act,] a plaintiff must demonstrate that: (1) [s]he is a qualified individual with a disability; (2) [s]he was denied the benefits of a program or activity of a public entity which receives

federal funds; and (3) [s]he was discriminated against based on h[er] disability."

*Wojewski v. Rapid City Reg'l Hosp., Inc.,* 450 F.3d 338, 344 (8th Cir. 2006)

(*quoting Gorman v. Bartch,* 152 F.3d 907, 911 (8th Cir. 1998)). An "otherwise

qualified handicapped individual[]" under the Rehabilitation Act is a person "who

is able to meet all of a program's requirements in spite of h[er] handicap."

*Beauford v. Father Flanagan's Boy's Home,* 831 F.2d 768, 771 (8th Cir. 1987)

(*quoting Southeastern Cmty. College v. Davis,* 442 U.S. 397, 406 (1979)). A

person who can no longer do her job is not protected by the Rehabilitation Act.

*Beauford,* 831 F.2d at 771. Also, to establish a violation of the Rehabilitation Act,

a plaintiff's alleged disability must be the *sole* impetus for any adverse action. *See*

*Wojewski,* 450 F.3d at 344 (Rehabilitation Act requires that plaintiff's disability

served as the sole impetus for defendant's adverse employment action).

Likewise, the ADA, 42 U.S.C. § 12101 *et seq.*, prohibits certain employers

from discriminating against individuals on the basis of their disabilities. 42 U.S.C.

§ 12112(a). A prima facie case of discrimination under the ADA requires that the

plaintiff be a qualified individual with a disability. An individual who is totally

disabled is, therefore, not a qualified individual with a disability under the ADA.

*Johnson v. U.S. Steel Corp.*, 943 F. Supp. 1108, 1114 (D. Minn. 1996). "[A]n

essential element of an ADA prima facie case is [also] an assertion that the

[p]laintiff has suffered an adverse employment action, under circumstances which

properly raise an inference of unlawful discrimination." *Id.* To be disabled under the ADA, a person must have "a physical or mental impairment that substantially limits one or more major life activities," "a record of such an impairment," and be "regarded as having such an impairment." 42 U.S.C. § 12102(1). Performing major life activities includes, but is not limited to, "caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working." 42 U.S.C. § 12102(2)(A).

The procedures of Title VII for exhaustion of administrative remedies, "specifically § 2000e-5, are applicable to actions brought under the ADA," *Muth v. Cobro Corp.,* 895 F. Supp. 254, 255 (E.D. Mo. 1995) (citing 42 U.S.C. § 12117), as well as to actions brought pursuant to the Rehabilitation Act, *see Orr v. City of Rogers,* 232 F. Supp. 3d 1052, 1059 (W.D. Ark. 2017) (citing 29 U.S.C. § 794a(a)). Notably, Plaintiff did not allege discrimination on the basis of disability on the joint EEOC-MCHR Charge of Discrimination form. (ECF 14.1).

First, for the reasons discussed above in regard to Count II, the Court finds that Plaintiff did not exhaust her administrative remedies regarding her claims of retaliation for her engaging in "Whistleblower protected activity" under the Rehabilitation Act and the ADA, *see Duncan,* 371 F.3d at 1025; *Orr,* 232 F. Supp. 3d at 1059; *Muth,* 895 F. Supp. at 255, and, alternatively, that Plaintiff's Complaint

was untimely in regard to these claims, *see Nelmida,* 112 F.3d at 384; *Winbush,* 66 F.3d at 1477; *Littell,* 62 F.3d at 259, and that, therefore, Count IV should be dismissed as to Plaintiff's Rehabilitation Act and ADA claims.

As for a prima facie case of employment discrimination based on her having a disability under the Rehabilitation Act and the ADA, in Count IV, Plaintiff does not allege that she was limited in regard to any major life activities, although, as discussed above in regard to equitable tolling, Plaintiff argues that she suffered from a disability. Also, in Count V, alleging a violation of the Rehabilitation Act, Plaintiff states that she suffered from "disabilities, including occupational stress" and in Count VII, alleging IIED, and Count VIII, alleging NIED, Plaintiff states that she sought "medical and psychological treatment due to stressors of the hostile work environment." (ECF 4, ¶¶ 69, 74, 76). Further, Plaintiff argues, in response to the Motions to Dismiss, that she was "considered disabled due to a mental disorder, severe depression and anxiety," and that "[t]his establishe[s] [her] 'disability status' along with [her] time off on FMLA, which further supports the issue of disability and is supported by medical evidence previously presented, as Exhibits, in [her] 'Amended Motion for Extension of Time to Obtain An Attorney.'" (ECF 26, ¶ 49).

In regard to elements of a cause of action under the Rehabilitation Act and the ADA, occupational stress is not a disability as defined by the Rehabilitation

33

Act or the ADA, but rather a factor that could, arguably, cause a disability. Further, as discussed above, Plaintiff's own exhibit establishes that, on October 14, 2017, she had normal physical, neurological, and psychiatric examinations. (ECF 24.28). Further, the mere fact that Plaintiff attended counseling does not establish that she has a disability. Additionally, Plaintiff's exhibits reflect that the SSD did grant her request for FMLA leave and that she was granted "Intermittent Leave." (ECF 24.19-24.20).

Liberally construing Plaintiff's Complaint, the Court finds that Plaintiff does not allege the elements of a prima facie case of retaliation under the Rehabilitation Act or the ADA for "Whistleblowing" as Plaintiff does not sufficiently allege facts to support her conclusory statements that she suffered from a disability or that she suffered an adverse employment action because she is disabled. *See Wojewsk,* 450 F.3d at 344; *Johnson, 843 F. Supp. at 1114*; *Joelson,* 177 F. Supp. 2d at 970. Also, as required for a violation of the Rehabilitation Act, Plaintiff does not allege that she had a disability which was the *sole impetus* for any adverse employment action taken by Defendants. *See Wojewski,* 450 F.3d at 344. To the contrary, Plaintiff alleges other reasons for Defendants' alleged adverse employment actions, including her age and race, as well as her being a "mandated reporter" under State law. In any case, Plaintiff does not suggest the nature of the whistleblowing activity in which she allegedly engaged. As such, the Court finds that Count IV of

Plaintiff's Complaint fails to state a claim for "Reprisal for Engaging in Whistleblower Protected Activity" under the Rehabilitation Act and the ADA, and that Count IV should, therefore, be dismissed in its entirety as to the SDS and the JSD. *See Twombly,* 550 U.S. at 555.

**Count V - Violation of the Rehabilitation Act:**

In addition to the facts which Plaintiff generally alleges in regard to all Counts, Plaintiff alleges, in support of Count V, that Defendants, "by and through their employees and agents, have discriminated against [her] by denying her reasonable accommodation for her disabilities, including occupational stress," and that Defendants conducted themselves "deliberately, willfully and in callous disregard" of Plaintiff's rights. (ECF 4 at ¶¶ 57-58).

As a preliminary matter, for the reasons discussed above in regard to Count IV, the Court finds that Plaintiff did not administratively exhaust her administrative remedies under the Rehabilitation Act, *see Duncan,* 371 F.3d at 1025; *Orr,* 232 F. Supp. 3d at 1059, and, alternatively, that Plaintiff's Complaint was untimely in regard to a violation of the Rehabilitation Act, *see Nelmida,* 112 F.3d at 384; *Winbush,* 66 F.3d at 1477; *Littell,* 62 F.3d at 259, and that, therefore, Count V should be dismissed.

Defendants argue that Count V should be dismissed because Plaintiff fails to allege the elements of a cause of action under the Rehabilitation Act. (ECF 14 at

10; ECF 16 at 5). As found above in regard to Plaintiff's claim of reprisal for engaging in "'Whistleblower' Protected Activity" in violation of the Rehabilitation Act in Count IV, Plaintiff does not sufficiently allege the elements of a prima facie case for discrimination under the Rehabilitation Act, *see Wojewski,* 450 F.3d at 344, that she suffered an adverse employment action because of her alleged disability, *see Joelson,* 117 F. Supp. 2d at 970, or that an alleged disability was the sole impetus for any adverse action Defendants took against her, *see Wojewski,* 450 F.3d at 344. Furthermore, Plaintiff does not allege facts to support her claim, in Count V, that Defendants denied her "reasonable accommodation." In fact, as discussed above in regard to Count IV, Plaintiff has submitted documentation demonstrating that the SSD accommodated Plaintiff's needs by granting her "intermittent FMLA leave." (ECF 24.19). The Court finds, therefore, that Plaintiff has failed to sufficiently allege a cause of action for a "Violation of the Rehabilitation Act," and that Count V of Plaintiff's Complaint should be dismissed as to the SSD and the JSD. *See Ashcroft,* 556 U.S. at 678; *Twombly,* 550 U.S. at 555.

**Count VI – Hostile and Abusive Work Environment in Violation of the MHRA, Title VII, the Rehabilitation Act, and the ADEA:**

In addition to the facts which Plaintiff generally alleges in regard to all Counts, Plaintiff alleges, in support of Count VI, that Defendants' conduct "constitutes an abusive work environment" in violation of the MHRA and Title

VII, and that the "stated reasons for Defendant[s'] conduct were not the true reasons, but instead were the pretext to hide Defendant[s'] discriminatory motive." (ECF 4 at ¶¶ 63-64).

Defendants argue, to the extent Plaintiff alleges a hostile and abusive work environment based on the MHRA and Title VII, that her claim is untimely; to the extent Plaintiff alleges a hostile and abusive work environment based on the ADEA, Plaintiff failed to exhaust her administrative remedies; and, to the extent Plaintiff alleges a hostile and abusive work environment based on the Rehabilitation Act, she has failed to allege the elements necessary for such a cause of action, including that she has a disability. (ECF 14 at 10; ECF 16 at 5; ECF 32 at 9).

Plaintiff argues, in regard to Count VI, that she "suffered retaliatory discrimination through the constant harassment over trying to assert and obtain certification for FMLA," that her "employer put up unnecessary and unwarranted roadblocks," and that the SSD "would constantly require that [she] provide further medical evidence outside the mandates of FMLA." (ECF 26, ¶ 52).

To the extent Plaintiff's hostile and abusive work environment claim is based on the MHRA, Title VII, the Rehabilitation Act, and the ADEA, the Court finds, for the reasons discussed above, that Plaintiff's hostile work environment Complaint was untimely filed. *See Nelmida,* 112 F.3d at 384; *Winbush,* 66 F.3d at

1477; *Littell,* 62 F.3d at 259; *Hammond,* 117 S.W.3d at 133. To the extent Plaintiff's hostile and abusive work environment claim in Count VI is based on the Rehabilitation Act and the MHRA and the ADEA for age discrimination, the Court also finds that Plaintiff did not exhaust her administrative remedies, *see Duncan, 371 F.3d at 1025; Stuart,* 217 F.3d at 630; *Bob Downes,* 831 F. Supp. at 735; *Taylor,* 2005 WL 2033422, at *3. The Court finds, therefore, that Count V should be dismissed.

To the extent Plaintiff alleges a hostile and abusive work environment, in Count VI, in violation of the Rehabilitation Act the MHRA and the ADEA for age discrimination, the Court finds, alternatively, that Plaintiff has not sufficiently alleged the elements of a cause of action. *See Joelson,* 117 F. Supp.2d at 970 (elements of Rehabilitation Act claim); *Kehoe,* 96 F.3d at 1104 n.11 (elements of ADEA claim); *Riley,* 518 F.3d at 1000-1001 (elements of age discrimination under ADEA and MHRA); *Clark,* 639 F.3d at 398 (elements of age discrimination under ADEA and MHRA). The Court finds, therefore, that Plaintiff has failed to state a cause of action in Count VI, and that Count VI should be dismissed, in its entirety, as to the SSD and the JSD.

**Count VII – Intentional Infliction of Emotional Distress (IIED) and Count VIII - Negligent Infliction of Emotional Distress (NIED):**

In addition to the facts Plaintiff alleges in regard to all Counts, Plaintiff alleges, in support of her claim for IIED, in Count VII, that the SDS's and the

JSD's conduct, as previously described, constitutes a hostile and abusive work environment in violation of Title VII, the Rehabilitation Act, and the ADEA, and that the "hostility and the abusiveness perpetrated on [] [P]laintiff [by Defendants] [was] designed to intentionally cause her emotional distress, and then refusing to address the ensuing disabilities due to the hostile behavior, threats and constant harassment along with threats of termination without redress to allow for rehabilitation [sic]." Plaintiff further alleges that "the reasons for the Defendant[s'] conduct were not the true reasons, but instead were the pretext to hide the Defendant[s'] discriminatory animus and their desire to force [] [P]laintiff to quit and leave the SSD and the JSD," and that "the conduct of the SSD and the JSD caused [] [P]laintiff to seek medical and psychological treatment to deal with the stressors of the hostile work environment." (ECF 4, ¶¶ 66-70)

In addition to the facts Plaintiff alleges in regard to all Counts, Plaintiff alleges in support of her claim for NIED, in Count VIII, that the SDS's and the JSD's conduct constitutes a hostile and abusive work environment in violation of Title VII, the Rehabilitation Act, and the ADEA; that the stated reasons for Defendants' conduct were not the true reasons, "but instead were the pretext to hide [] Defendant[s'] discriminatory animus and their desire to force [] [P]laintiff to quit and leave the SSD and the JSD"; that the "hostility and the abusiveness perpetrated on [] [P]laintiff [was] designed to cause, by reason of negligence, to

create emotional distress, and then ignoring requests to address the ensuing disabilities due to the hostile behavior, threats and constant harassment, along with threats of termination, were without a doubt negligent supervisory acts on the part of the SSD and the JSD"; that "[a]ll this occurred without redress to allow for rehabilitation"; that Defendants' conduct was a pretext to "hide [] Defendant[s'] discriminatory animus and their desire to hopefully get rid of a teacher who engaged in acting according to the law and reporting abuse and reporting illegal and unethical activities within the building at Northview Elementary and SSD"; and that the "conduct of the SSD and the JSD caused [] [P]laintiff to seek medical and psychological treatment to deal with the stressors of the hostile work environment." (ECF 4, ¶¶ 72-77).

Plaintiff's claims for IIED and NIED, in Counts VII and VIII, respectively, are for injuries she allegedly received while employed by the SSD and the JSD. Workers' compensation laws, however, provide "the exclusive remedy for injuries arising out of and in the course of employment," *Palermo v. Tension Envelope Corp.*, 959 S.W.2d 825, 829 (Mo. Ct. App. 1997) (*citing* Mo. Rev. Stat. § 287.120), and the Missouri Labor and Industrial Relationship Commission has exclusive jurisdiction over such claims, *see Killian v. J & J Installers, Inc.*, 802 S.W.2d 158, 160 (Mo. 1991) (en banc); *see e.g., Nichols v. American Nat'l Ins. Co.*, 945 F. Supp. 1242 (E.D. Mo. 1996) (dismissing the plaintiff's claim of

intentional infliction of emotional; "[b]ecause these acts and the emotional injuries flowing from them necessarily occurred during the course of Plaintiff's employment, the Court holds that Missouri's Workers' Compensation Law provides the exclusive remedy for the emotional distress inflicted."). The Court finds, therefore, that Plaintiff's claims of IIED and NIED in Counts VII and VIII, respectively, should be dismissed because they are preempted by Missouri Workers' Compensation Act.

In any case, in support of her claims of IIED and NIED, Plaintiff has failed to sufficiently allege that her "emotional distress is medically diagnosable and medically significant," which is an element of such claims; her allegation that she sought medical and psychological treatment to "deal with the stressors of the [alleged] hostile work environment" is insufficient.[5] *Miller v. Wackenhut Servs.,*

---

[5] Additionally, the elements of the tort of IIED under Missouri law are as follows:

> To state a claim for intentional infliction of emotional distress, a plaintiff must plead extreme and outrageous conduct by a defendant who intentionally or recklessly causes severe emotional distress that results in bodily harm. *K.G. v. R.T.R.,* 918 S.W.2d 795, 799 (Mo. banc 1996). The conduct must have been "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Warrem v. Parrish,* 436 S.W.2d 670, 673 (Mo. 1969). The conduct must be "intended only to cause extreme emotional distress to the victim." *K.G.,* 918 S.W.2d at 799.

*Gibson v. Brewer,* 952 S.W.2d 239, 249 (Mo. 1997) (en banc). *See also Roe v. St. Louis University,* 2009 WL 910738, at *5 (E.D. Mo. Apr. 2, 2009).

*Inc.,* 808 F. Supp. 697, 701 (W.D. Mo. 1992). *See also Thornburg v. Fed. Express Corp.,* 62 S.W.3d 421, 427 (Mo. Ct. App. 2001) (in addition to general allegations of negligence, claims seeking recovery of damages for NIED require proof that: "1) that the defendant should have realized that his conduct involved an unreasonable risk of causing distress, and 2) that the emotional distress or mental injury must be medically diagnosable and must be of sufficient severity so as to be medically significant.").

Further, to the extent that Plaintiff contends, in Counts VII and VIII, that Defendants' conduct, including her being assigned to a particular school in the JSD or the Hazelwood School District, resulted in her emotional distress, Defendants' conduct, as alleged in the Complaint, certainly is not so outrageous or extreme "as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Gibson v. Brewer,* 952 S.W.2d 239, 249 (Mo. 1997) (en banc). Finally, based on the facts provided in the Complaint, it cannot be said that Defendants should have realized that their alleged conduct, including assigning Plaintiff to a particular school, involved an unreasonable risk of causing distress. *See Thornberg,* 62 S.W.3d at 427. The Court finds, therefore, in the alternative, that Count VII and Count VIII of Plaintiff's Complaint should be dismissed, as to the SSD and the JSD, based on Plaintiff's failure to state a claim.

*See Ashcroft,* 556 U.S at 678; *Twombly,* 550 U.S. at 555.

**Count IX – Tortious Interference with a Business Relationship:**

In addition to the facts which Plaintiff alleges in regard to all Counts, in support of her claim of Tortious Interference with a Business Relationship, in Count IX, Plaintiff's alleges that: she is "third party beneficiary to the contract between the [SSD] of the Missouri NEA (Union)"; she "should have been allowed to work overtime and receive extra monies afforded to SSD teachers pursuant to the needs of the district"; Plaintiff "was unfairly discriminated against and then further retaliated against by not allowing her to work in the SNAP program"; DeAndria Player intended "to disrupt [] [P]laintiff's flow of income from the SSD by removing her as being available to work within the SNAP program"; "[t]his was done in retaliation to [] [P]laintiff['s] being a 'Whistleblower'"; Player interfered with the rights afforded Plaintiff "under the Collective Bargaining Agreement to earn additional monies" and "to be employed in an environment free from hostility"; Player's "constant harassment of [] [P]laintiff prevented her from engaging in activities necessary to foster a good working relationship with the employer, SSD, and the individual School District, JSD"; Player's "constant interference in [] [P]laintiff's obligation to teach[] appropriately created a disconnect from the JSD and [] [P]laintiff, barring her from complying with the terms of the contract"; the "continuous interference, harassment and falsifying

records prevented [] [P]laintiff from earning money toward annual income and lifetime retirement"; "[t]he obstructive conduct of [] Player, on behalf of SSD, and her individually, did cause the JSD problems at their schools [and] did cause [] [P]laintiff to seek medical and psychological treatment to deal with the stressors of the hostile work environment in violation of the collective bargaining agreement"; and "[t]he stated reasons for [] Defendant's conduct were not the true reasons, but instead were the pretext to hide the Defendant's discriminatory animus." (ECF 4, ¶¶ 79-88).

As argued by the JSD (ECF 16 at 6), Missouri public schools districts are considered public governmental entities for purposes of Missouri's sovereign immunity statute, Mo. Rev. Stat. § 537.600 (providing that "public" entities are immune from suit for compensatory damages for negligent acts or omissions, with certain exceptions such as the negligent operation of a motor vehicle by public employees). *See Patterson v. Meramec Valley R-III Sch. Dist.,* 864 S.W.2d 14, 15 (Mo. Ct. App. 1993); *Spearman v. Univ. City Pub. Sch. Dist.,* 617 S.W.2d 68, 71 (Mo. 1981) (en banc) (as a general rule, a school district is immune from liability in tort). The Court finds, therefore, that Plaintiff's claim, in Count IX, for tortious interference with a business expectancy against the SSD and the JSD is barred based on the sovereign immunity provided by Mo. Rev. Stat. § 537.600 and that Count IX should be dismissed.

Further, as argued by the SSD, an action for tortious interference with a business expectancy lies only against a third party, and "[w]here the individual being sued is an officer or agent of the defendant corporation, the officer or agent acting for the corporation is the corporation for purposes of tortious interference." (ECF 14 at 12) (*citing Reed v. Curators of University of Missouri*, 509 S.W.3d 816, 828 (Mo. Ct. App. 2016)). Given that Plaintiff alleges a contractual relationship based on the Collective Bargaining Agreement between the SSD and the Union, Plaintiff's claim against the SSD must, therefore, fail as she is not suing a third party.

In her Response, Plaintiff argues that she sufficiently alleges a cause of action for tortious interference with a business expectancy because DeAndria Player "prevented [her] from making the extra income which impact[ed] her pension as well as [her] day to day living," and that Player is a "third party. (ECF 26, ¶ 65). To the extent Plaintiff suggests that she does not allege that the SSD or the JSD engaged in any interference with a business expectancy, rather that Player, as a third party acted alone, the issue before the Court is whether Count IX should be dismissed as to the SSD and the JSD rather than as to Player. To the extent Plaintiff suggests that Player was acting as an agent for the SSD or the JSD, her claim likewise fails to state a claim because, as an agent of the SSD and/or the JSD, Player was acting for them and was them for purposes of tortious

interference; she was not acting as a third party. *See Reed*, 509 S.W.3d at 828 (where the individual being sued is an officer or agent of the defendant corporation, the officer or agent acting for the corporation is the corporation for purposes of tortious interference). The Court finds, therefore, alternatively, that Plaintiff has failed to state a cause of action against the SSD and the JSD for tortious interference with a business expectancy based on her failure to sufficiently allege that the SSD and/or the JSD are third parties, *see Ashcroft,* 556 U.S. at 678; *Twombly,* 550 U.S. at 555, and that Count IX should be dismissed as to the SSD and the JSD.

**Count X – Willful and Wanton:**

To the extent Plaintiff brings a separate cause of action against the SSD and the JSD for "willful and wanton" conduct, under Missouri law, a "punitive damage claim is not a separate cause of action"; "it must be brought in conjunction with a claim for actual damages." *Misischia v. St. John's Mercy Med. Ctr.,* 30 S.W.3d 848, 866 (Mo. Ct. App. 2000).

To the extent Plaintiff seeks punitive damages against Defendants based on Counts I through IX, Count X fails because the Court has found that her claims for actual damages in Counts I through IX should be dismissed. As such, the Court finds that Count X should be dismissed against the SSD and the JSD based on Plaintiff's failure to state a claim. *See Ashcroft,* 556 U.S. at 678; *Twombly,* 550

U.S. at 555.

**Jennings School District:**

The JSD argues that, at all times relevant it was not Plaintiff's employer; rather, she was employed by the SSD, and that, therefore, Plaintiff's claims against it for discrimination and/or retaliation in employment should be dismissed.  (ECF 16 at 2).  Plaintiff argues, in response, that the SSD and the JSD are joint employers.  (ECF 27 at 3).

Plaintiff's Complaint does not specifically allege that the SSD and the JSD are joint employers and does not allege facts relevant to a determination of joint employer status.  *See e.g., Scheidecker v. Arvig Enterprises, Inc.,* 122 F. Supp. 2d 1031, 1037 (D. Minn. 2000) ("The single entity analysis consists of four factors: (1) interrelation of operations; (2) common management; (3) centralized control of labor relations; and (4) common ownership or financial control.") (citation omitted).  Rather, in her pleadings in response to the JSD's Motion to Dismiss, Plaintiff simply makes the legal conclusion that the SSD and the JSD are joint employers; she does not address the factual prerequisites for joint employer status.

Further, Plaintiff's Complaint does allege that she "has been *employed with SSD* for 24 ½ years," and, in regard to persons who allegedly engaged in the conduct of which she complains, that DeAndria Player and Gina Hastey were SSD supervisors (ECF 4, ¶¶ 11, 30, 32-45); that Constance Johnson was an area

coordinator and did what she was told to do by Player; and that Jody Haye was a supervisor in the SNAP program (ECF 4, ¶ 40). As for JSD representatives or agents, Plaintiff alleges only that Dr. Hicks-Prophet, a principal, gave her "dirty glaring looks and beg[an] to ostracize her," (ECF 4, ¶ 39), and that Dr. Guyton, an assistant principal, said only that " we don't need a circus with spectators" (ECF 4, ¶ 38). Nonetheless, for purposes of the JSD's Motion to Dismiss, the Court need not determine whether Plaintiff sufficiently alleges that the SSD and the JSD are joint employers for purposes of Plaintiff's cause of action given that the Court has found that Plaintiff has failed to state a cause of action against the JSD, in Counts I through X, for other reasons.

## CONCLUSION

For the reasons set forth above, the Court finds that Plaintiff's "Objection to Defendant's Removal of Plaintiff's Case Filed in Missouri State Court" and "Amended Objection to Defendant's Removal of Plaintiff's Case Filed in Missouri State Court" should be denied; that the SSD's and the JSD's Motions to Dismiss should be granted; and that Plaintiff's Complaint should be dismissed in its entirety in regard to Plaintiff's claims against the SSD and the JSD.

Accordingly,

**IT IS HEREBY ORDERED** that Plaintiff's "Objection to Defendant's Removal of Plaintiff's Case Filed in Missouri State Court" (ECF 19) and

"Amended Objection to Defendant's Removal of Plaintiff's Case Filed in Missouri State Court" (ECF 28) are **DENIED**;

      **IT IS FURTHER ORDERED** that Plaintiff's Complaint (ECF 4) is **DISMISSED** as to Defendants the Special School District of St. Louis County and the Jennings School District and that the Special School District of St. Louis County and the Jennings School District are **DISMISSED** from this case; and

      **IT IS FINALLY ORDERED** that, at the termination of this case, Judgment will be entered incorporating this Memorandum and Order.

Dated this 10th Day of May 2018.

/s/ Jean C. Hamilton
UNITED STATES DISTRICT JUDGE